******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KEVIN LYNCH
## (AC 41420)

Lavine, Keller and Elgo, Js.

*Syllabus*

The defendant, who had been convicted on guilty pleas under multiple informations of three counts operating a motor vehicle while under the influence of intoxicating liquor in violation of statute (§ 14-227a), two counts of failure to appear in the second degree and of criminal trespass in the first degree, appealed to this court challenging the trial court's denial of his motion to withdraw his guilty pleas. At sentencing, the defendant made an oral motion to withdraw his guilty pleas on the ground that he was under the influence of psychotropic medication at the time he entered the plea agreement and because the plea canvass was deficient. Defense counsel also claimed that he was ineffective. The trial court denied the motion to withdraw the guilty pleas and sentenced the defendant in accordance with his pleas. *Held:*

1. The trial court did not abuse its discretion in failing to conduct an evidentiary hearing with respect to the defendant's motion to withdraw his guilty pleas; the defendant never requested an evidentiary hearing on the motion, the trial court afforded him an opportunity to be heard on his various claims, including his motion to withdraw his pleas at the sentencing hearing itself, and the defendant failed to provide an adequate factual basis to support a further hearing, as the defendant told the court during the plea canvass that he was not under the influence of drugs, alcohol or medications, he did not provide the names of any medications or claim that they rendered his guilty pleas involuntary, defense counsel's assertion that the plea canvass was deficient for failing to specify that the defendant's driver's license could be revoked permanently was not a reason among the grounds enumerated in the applicable rule of practice (§ 39-27) for the withdrawal of a plea, and neither defense counsel nor the defendant provided a factual basis for the assertion that defense counsel had been ineffective.

2. The defendant could not prevail on his claim that the trial court should have granted his motion to withdraw his guilty pleas, pursuant to the applicable rule of practice (§ 39-27), on the ground that his counsel was ineffective, as the defendant failed to satisfy his burden of providing that the guilty pleas resulted from the denial of effective assistance of counsel; although the defendant claimed that his counsel rendered ineffective assistance for failing to investigate his case in several ways, defense counsel presented only bare assertions of those claims, and the defendant, thus, presented an inadequate factual and legal basis to support his assertion, and neither the defendant nor his counsel articulated or proved that but for counsel's alleged errors, the defendant would not have pleaded guilty and would have insisted on going to trial.

3. The trial court did not abuse its discretion by failing to conduct an evidentiary hearing prior to terminating the defendant's participation in an alcohol education program, the purpose of which is to allow first time offenders of § 14-227a an opportunity to rehabilitate so as to avoid further involvement with the criminal justice system while protecting the public from persons who operate a motor vehicle while under the influence of intoxicating liquor; the defendant had been admitted to the program following his second operating a motor vehicle while under the influence charge, after which he was arrested for a third such charge and entered into a global plea agreement that included guilty pleas to three counts of operating a motor vehicle while under the influence as a first offender, and it was apparent from the record that the trial court recognized that, by pleading guilty to those three counts, the defendant effectively conceded that, despite participating in the program, he was not entitled to a dismissal of the charge, and in light of the circumstances surrounding the defendant's pleas, the court properly made an independent determination that the termination of the defendant's participation in the program was warranted.

Argued April 22—officially released October 22, 2019

Substitute informations charging the defendant with three counts each of the crimes of operating a motor vehicle while under the influence of intoxicating liquor as a first offender and failure to appear in the second degree, with the crimes of risk of injury to a child, criminal trespass in the first degree, disorderly conduct, failure to appear in the first degree, criminal violation of a protective order, violation of the conditions of release in the second degree and illegal operation of a motor vehicle while his driver's license was suspended, and with the infraction of operating an unregistered motor vehicle, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the defendant was presented to the court, *Prats, J.*, on guilty pleas as to three counts of operating a motor vehicle while under the influence of intoxicating liquor as a first offender, two counts of failure to appear in the second degree, and one count each of risk of injury to a child and criminal trespass in the first degree; thereafter, the court, *Williams, J.*, denied the defendant's motion to withdraw and to vacate his guilty pleas, and rendered judgments of guilty and sentenced the defendant in accordance with the pleas; subsequently, the court, *Williams, J.*, vacated the conviction of risk of injury of a child in accordance with the pleas; thereafter, the state entered a nolle prosequi as to the remaining charges, and the defendant appealed to this court. *Affirmed.*

*Kevin Lynch*, self-represented, the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Michael Weber*, senior assistant state's attorney, for the appellee (the state).

*Opinion*

ELGO, J. The self-represented defendant, Kevin Lynch, appeals from the judgments of conviction rendered by the trial court following the denial of his motion to withdraw his guilty pleas. On appeal, the defendant claims that the court improperly (1) failed to conduct an evidentiary hearing on his motion to withdraw his guilty pleas, (2) denied his motion to withdraw his guilty pleas, and (3) failed to conduct an evidentiary hearing prior to terminating his participation in the pretrial alcohol education program (program). We affirm the judgments of the trial court.

The record reveals the following relevant facts and procedural history. On October 7, 2016, pursuant to a global plea agreement that encompassed all of the defendant's cases and was reached in accordance with *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997),[1] the defendant entered guilty pleas to three counts of operating a motor vehicle while under the influence of intoxicating liquor as a first offender in violation of General Statutes § 14-227a, two counts of failure to appear in the second degree in violation of General Statues § 53a-173, and to one count each of risk of injury to a child in violation of General Statutes § 53-21, and criminal trespass in the first degree in violation of General Statutes § 53a-107. In accordance with the *Garvin* agreement, the court, *Prats, J.*, agreed to sentence the defendant to a total effective sentence of four years of incarceration, execution suspended, with three years of probation. Pursuant to that agreement, the defendant's conviction of risk of injury to a child would be vacated. The court, however, also advised the defendant that he remained subject to a possible sentence of up to fourteen and one-half years of incarceration if he violated the terms of the *Garvin* agreement by failing to comply with an inpatient alcohol treatment program, by being arrested with probable cause on any new charges prior to his sentencing, or by failing to appear at the sentencing hearing.

The sentencing hearing was held on February 15, 2018. At that time, the state indicated that the defendant had complied with the conditions of the *Garvin* agreement and, therefore, the state was prepared to enter a nolle prosequi as to the defendant's conviction of risk of injury to a child, once the court vacated that conviction. The court, *Williams, J.*, then asked the clerk to verify before they proceeded that the program in one of the defendant's cases was previously terminated.[2] The clerk responded that he had no record of that in the court's file. In response, the state argued that the "agreed disposition and the fact that the plea was entered . . . more than implies the fact that [the program] was supposed to be terminated . . . ."

Defense counsel responded that he believed that a

notice of successful completion of the program was filed with the court by the bail commissioner. He also stated that the program had not been terminated and that "there is a valid argument to be made in that file that the [successful completion of the program] should be acknowledged by the court . . . [a]nd that matter should be dismissed . . . ." The court then asked defense counsel if this issue was raised at the time of the *Garvin* plea. Defense counsel answered: "No, it was not [raised], because in all candor to this court, I did not comprehend the procedural history of [the defendant's] several cases . . . . At that point in time, my primary focus was to persuade the court . . . to allow for inpatient treatment for [the defendant]."

Defense counsel went on to explain: "But, I also didn't understand at that time . . . that [the defendant] was under [the influence of] about four psychotropic medications administered by the Department of Correction. And what I also didn't take up with the court or with the state is the history of this particular file and the fact that the [program] had been granted by the court. I believe Judge Suarez had granted the [program] with full knowledge with the preexisting matter then still at GA 10 in New London. Also, there was a family violence education program granted in this courthouse at about the same time in a different but companion matter. And there was . . . in that case a successful completion of the family violence education program, as well. And only since long after October 6 have I become aware and better understood the procedural history here. And then, while . . . I have learned only in the past week that there . . . was an absolute defense to the New London failure to appear, to which he [pleaded] guilty on October 7, 2016, which I had no understanding about it at all. And . . . there is a substantial defense to [the failure to appear charge], Your Honor. So . . . the combination of those . . . factored in the new information, is why I would respectfully pray the court to allow me to fulfill my obligations to [the defendant] . . . by allowing me three or four days to file motions and a brief on this issue of [the program]. The last case of the operating under the influence occurred after the one year dismissal date of the [program], as I recall, Your Honor. And the [program] had not been dismissed on the scheduled date only because . . . documentation from [Connecticut Valley Hospital] had not been received by the bail commissioner. So what I'm saying in good faith, to the court and to the state, is that there is a substantial amount of information that I respectfully suggest calls into question the validity of the pleas, to the failures to appear, as well as the plea to the file that we've just confirmed the [program] had not been terminated in, at the time of the plea."

The court responded by asking defense counsel if he wanted the court to not honor the plea agreement. The court also pointed out that the plea agreement was

entered in 2016, that it involved matters dating back to 2014, and that the court had granted multiple continuances in this matter. While defense counsel and the defendant conferred, the court stated that the clerk had discovered that "on [program] progress reports . . . the defendant, apparently, did not complete the fifteen sessions for which he was referred. However, he completed detox and residential treatment."

Subsequently, the following colloquy occurred:

"[Defense Counsel]: I would ask Your Honor for simply four days to file—

"The Court: Well, that's denied. . . . I said back in January that today was the day for sentencing. I made that clear. On January 11, I made that abundantly clear. This is it. This is the sentencing day. And now I'm hearing an oral motion to, I guess, delay sentencing. I'm hearing an oral motion to not honor the plea agreement, after a full canvass based on information that's being brought to the court's attention for the first time. So are you asking the court—first of all, on the [program], your position is that case should be dismissed despite the clear plea agreement with Judge Prats?

"[Defense Counsel]: Yes.

"The Court: That's your motion?

"[Defense Counsel]: Yes, Your Honor.

"The Court: And separately, you're asking the court not to honor the Judge Prats plea agreement of the fully suspended sentence and the vacating of the risk of injury?

"[Defense Counsel]: Well, what I'm asking, Your Honor, is the opportunity to provide the court, and specifically the state, with documentation regarding the failures to appear.

"The Court: That you don't have today on what's the known sentencing date on a case where the pleas were entered [in] October, 2016. That request is denied.

"[Defense Counsel]: Yes, Your Honor.

"The Court: Anything further from defense at this point?

"[Defense Counsel]: May the defendant withdraw his . . . pleas from October?

"The Court: Based on what?

"[Defense Counsel]: Based on the fact that, Your Honor, he was under [the influence of] four psychotropic medications from [the Department of Correction], based upon the fact that the canvass by Judge Prats did not specify the penalties that would attach to three convictions of operating under the influence.

"The Court: Such as what?

"[Defense Counsel]: A lifetime revocation and, ah—

"The Court: Are you saying that's part of—it's something that I normally point out. But, where's your legal support for that argument?

* * *

"[Defense Counsel]: From the Practice Book, Your Honor, for the canvass of a guilty plea."

Subsequently, the court asked the state if it would like to be heard. The state responded by arguing that Judge Prats complied with the requirements in Practice Book § 39-19 for the acceptance of a plea. The state also enumerated the grounds for allowing the withdrawal of a plea pursuant to Practice Book § 39-27, and argued that the defendant had "no basis upon which at this particular point to withdraw the plea." Accordingly, the state argued that the court should go forward with sentencing.

Thereafter, the court asked defense counsel if he wanted to be heard and the following colloquy occurred:

"[Defense Counsel]: Your Honor, I am claiming that I was ineffective for [the defendant].

"The Court: Why should that not be taken up as part of a habeas? The state has pointed out a persuasive argument as to why defense counsel's motion should be denied—his oral motion—should be denied. Why should that not be a habeas as opposed to vacating the plea? Because, then here's what is going to happen? So you're telling me it's a habeas. And then you're going to tell me that you're moving to withdraw, right, for trial, because you're ineffective and shouldn't be representing him going forward, right? That's where . . . this is headed, now.

"[Defense Counsel]: I don't . . . think that it is, Your Honor.

"The Court: Okay. So despite a concession that you think that you're ineffective, you're saying you'd be prepared to go forward with this trial, if it were scheduled immediately?

"[Defense Counsel]: Yes, Your Honor.

"The Court. Okay. Anything further from either party on any of this?

"[The Prosecutor]: Judge, I indicated the Practice Book sections and the fact that I agree, obviously, with the court as I was implying. It's a habeas matter. I can't see why in the world they should be allowed to withdraw at this point.

"The Court: Anything further from defense?

"[Defense Counsel]: No, thank you, Your Honor."

Thereafter, the court concluded: "For the reasons cited by the state, the court finds no legal reason to vacate the pleas and finds that it would not be in the interest of justice to further delay these matters that go back four years in some cases. . . . By way of plea agreement, in docket number ending in 1617, the court terminates the [program]. This was the clear intention of both parties when the plea agreement was entered in front of Judge Prats, that this would result in a conviction for driving under the influence, as a triple first offender. The defendant is receiving a substantial benefit by way of a fully suspended sentence and being allowed to vacate his felony plea to the risk of injury to a child. For all of those reasons, [the program] is terminated in [docket number ending in] 1617."

Subsequently, the court sentenced the defendant to a total effective sentence of four years, execution suspended, with three years of probation subject to certain special conditions, including a $500 fine for each conviction of operating a motor vehicle while under the influence, as required by law, and 300 hours of community service. The defendant also was obligated to comply with the ignition airlock device requirements applicable to him by law, and he was ordered not to drive without a valid motor vehicle license. Pursuant to the plea agreement, the court vacated the defendant's risk of injury to a child conviction and the state, thereafter, entered a nolle prosequi as to that count. This appeal followed.

I

The defendant first argues that the court abused its discretion by failing to conduct an evidentiary hearing on his motion to withdraw his guilty pleas. In response, the state contends that the defendant failed to request an evidentiary hearing, rendering the claim unpreserved, and, in any event, under *State* v. *Simpson*, 329 Conn. 820, 189 A.3d 1215 (2018), the defendant was not entitled to an evidentiary hearing. We agree with the state.

We begin with the standard of review and the relevant principles of law that govern our analysis. "It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court cor-

rectly applied the law and could reasonably have reached the conclusion that it did. . . .

"Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon proof of one of the grounds in [Practice Book §] 39-27[3] . . . .

"We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea. . . . [T]he administrative need for judicial expedition and certainty is such that trial courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions of an invalid plea in hopes of delaying their sentencing. . . .

"When the trial court does grant a hearing on a defendant's motion to withdraw a guilty plea, the requirements and formalities of the hearing are limited. . . . Indeed, a hearing may be as simple as offering the defendant the opportunity to present his argument on his motion for withdrawal. . . . [A]n *evidentiary* hearing is rare, and, outside of an evidentiary hearing, often a limited interrogation by the [c]ourt will suffice [and] [t]he defendant should be afforded [a] reasonable opportunity to present his contentions. . . .

"Thus, when conducting a plea withdrawal hearing, a trial court may provide the defendant an opportunity to present a factual basis for the motion by asking open-ended questions. . . . Furthermore, in assessing the adequacy of the trial court's consideration of a motion to withdraw a guilty plea, we do not examine the dialogue between defense counsel and the trial court . . . in isolation but, rather, evaluate it in light of other relevant factors, such as the thoroughness of the initial plea canvass. . . .

"This flexibility is an essential corollary of the trial court's authority to manage cases before it as is necessary. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . Therefore, the trial court is not required to formalistically announce that it is conducting a plea withdrawal hearing; nor must it demarcate the hearing from other related court proceedings.

It may conduct a plea withdrawal hearing as part of another court proceeding, such as a sentencing hearing. . . . When a trial court inquires into a defendant's plea withdrawal motion on the record, it is conducting a plea withdrawal hearing." (Citations omitted; emphasis altered; footnote added; internal quotation marks omitted.) *State* v. *Simpson*, supra, 329 Conn. 836–39.

In *Simpson*, our Supreme Court held that the trial court "conducted a hearing on the defendant's motion to withdraw his guilty plea, after which no further evidentiary hearing was required, because his allegations did not furnish a proper basis for withdrawal under Practice Book § 39-27." Id., 835. Our Supreme Court further determined that the record in that case reflected that "the trial court gave the defendant a reasonable opportunity to present his contentions" and a "review of the trial court's approach illustrates the adequacy of the hearing." Id., 839. Thus, it considered the trial court's inquiry into the defendant's motion and how the trial court "allowed the defendant to present a factual basis for the motion . . . ." (Internal quotation marks omitted.) Id., 839–40. Our Supreme Court also explained that it was "irrelevant that the court did not explicitly label its inquiry into the defendant's motion as a hearing. Nor [did] it matter that the trial court addressed the defendant's motion during sentencing. The defendant and his attorney both had ample opportunity to meet their burden of establishing a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) Id., 841.

As the state points out, the defendant never requested an evidentiary hearing. Instead, the trial court afforded the defendant an opportunity to be heard on his various claims, including his motion to withdraw his pleas at the sentencing hearing itself. The transcript of the sentencing hearing reveals that the defendant asked if he could withdraw his guilty pleas[4] and the court asked in response: "Based on what?" Accordingly, like the trial court in *Simpson*, the court in the present case afforded the defendant the opportunity to "present a factual basis for the motion through an open-ended question." (Internal quotation marks omitted.) Id., 840. When defense counsel responded by stating that the defendant was under the influence of medications and that the canvass "did not specify the penalties that would attach to three convictions of operating under the influence," the court then inquired further with another open-ended question: "Such as what?" Additionally, after the state argued that Judge Prats had complied with the requirements of Practice Book § 39-19 for acceptance of a plea, enumerated the grounds for allowing the withdrawal of a plea pursuant to Practice Book § 39-27, and argued that the defendant had presented no factual basis to support the withdrawal of the pleas, the court provided the defendant with an opportunity to respond.

At that point, defense counsel stated for the first time: "Your Honor, I am claiming that I was ineffective for [the defendant]." After suggesting the circumstances were more appropriate for a habeas proceeding, the court then asked if either party had anything further. Although the state made some final remarks, defense counsel stated that he had nothing further. The court then asked the defendant if he wished to add anything, to which the defendant responded that he had nothing to add. Finally, the court confirmed with the state that it was willing to follow the agreement as to the risk of injury to a child conviction. The court then asked defense counsel and then the defendant, once again, if either had anything further. Both defense counsel and the defendant responded that they had nothing further.[5] Thereafter, the court in the present case, like the trial court in *Simpson*, "terminated the hearing by denying the plea withdrawal motion . . . ." Id., 841.

In considering whether the defendant provided an adequate factual basis for requiring an evidentiary hearing, we turn to the specific grounds asserted in the defendant's motion to withdraw his guilty pleas. The defendant provided three bases on which he sought to withdraw his pleas: (1) the defendant was under the influence of psychotropic medications at the time that he pleaded guilty; (2) the plea canvass was deficient for failing to specify that the defendant's driver's license might be permanently revoked by the Department of Motor Vehicles; and (3) defense counsel had rendered ineffective assistance. As to the claim that the defendant was under the influence of psychotropic medications at the time that he pleaded guilty, the defendant did not elaborate at the sentencing hearing beyond that bald assertion. He did not provide the names of those medications, or evidence of those medications and their effects. See *State* v. *Stith*, 108 Conn. App. 126, 130–31, 946 A.2d 1274 (court did not abuse its discretion in denying defendant's motion to withdraw guilty plea on basis that he was under influence of medication when he entered plea where defendant stated at plea canvass that he was not under the influence of any alcohol, drugs, or medication and defendant provided at hearing on motion to withdraw plea names of medications but did not offer proof of their effects), cert. denied, 289 Conn. 905, 957 A.2d 874 (2008). Additionally, the defendant did not claim that his use of those medications rendered his guilty pleas involuntary.

"[O]ur case law requires that a defendant show a plausible reason for the withdrawal of a guilty plea . . . and allege and provide facts that warrant a trial court's consideration of his motion." (Citation omitted; internal quotation marks omitted.) *State* v. *Anthony D.*, 320 Conn. 842, 854, 134 A.3d 219 (2016). Moreover, "we do not view the hearing in isolation but can look to other factors, such as the existence of a thorough plea can-

vass . . . ." *State* v. *Simpson*, supra, 329 Conn. 841; see also *State* v. *Stith*, supra, 108 Conn. App. 131 ("[i]t is well established that [a] trial court may properly rely on . . . the responses of the [defendant] at the time [he] responded to the trial court's plea canvass" [internal quotation marks omitted]). Our review of the plea canvass reveals that the defendant was asked if he was under the influence of any alcohol, drugs, or medications. The defendant responded: "No, Your Honor." Accordingly, on the basis of our review of the record, we conclude that the court did not abuse its discretion in failing to conduct an evidentiary hearing on the defendant's motion to withdraw his guilty pleas due to his allegedly being under the influence of drugs at the time of his pleas because the defendant failed to demonstrate an adequate factual basis to support a further hearing.

In considering the defendant's claim that the plea canvass was deficient for failing to specify that his operator's license could be revoked permanently, the court asked defense counsel to provide legal support for that proposition. When defense counsel referred to the rules of practice, the court properly concluded that the relevant provisions of Practice Book § 39-19 on the acceptance of a guilty plea do not require advising the defendant of the possible revocation of his driver's license. "The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006). Thus, defense counsel's assertion that the plea canvass was deficient for failing to specify that the defendant's driver's license could be revoked permanently was not a reason "among the grounds enumerated in Practice Book § 39-27 for the withdrawal of a plea, and the court had no reason to inquire further, such as by way of an evidentiary hearing." *State* v. *Simpson*, supra, 329 Conn. 841–42. Accordingly, because it is clear, as a matter of law, that the defendant could not prevail, we conclude that the court did not abuse its discretion in failing to conduct an evidentiary hearing.

As to defense counsel's assertion that he had rendered ineffective assistance, on appeal, the defendant and the state disagree as to what basis defense counsel provided at the sentencing hearing to support his argument. The state argues that defense counsel provided only a "conclusory assertion that he had been ineffective . . . ." In contrast, the defendant argues that defense counsel provided evidence of his ineffectiveness when (1) he told the court that he "did not comprehend the procedural history of [the defendant's] several cases"; (2) he stated that he was not aware at the time of the defendant's guilty plea that the defendant

"was [on] about four psychotropic medications administered by the Department of Correction"; (3) he indicated that he "didn't take up with the court or with the state . . . the history of this particular file and the fact that the [program] had been granted by the court"; and (4) he stated that he had "learned only in the last week that there . . . was an absolute defense to the New London failure to appear . . . ." Our review of the record, however, indicates that those arguments were not made in support of an ineffective assistance of counsel claim. Instead, those claims were advanced initially to justify a continuance of the sentencing hearing, which the court denied,[6] and then subsequently to support a motion to withdraw the guilty pleas.

At the point that defense counsel stated that he was ineffective, neither defense counsel nor the defendant provided any factual basis to support that assertion. Moreover, after questioning counsel about whether these claims more properly were for a subsequent habeas proceeding, the court asked counsel and the defendant several times whether they had anything further to say regarding the claim of ineffectiveness and the withdrawal of the pleas. Neither the defendant nor his counsel added any further support or factual basis for the ineffective assistance of counsel claim. As we have recounted previously, defense counsel did not argue his oral motion to withdraw the guilty pleas until the court denied his initial request for time to file documents with the court. Additionally, once defense counsel specifically began arguing the motion to withdraw the guilty pleas, defense counsel asserted that the guilty pleas should be withdrawn because the defendant was under the influence of psychotropic medications at the time that he pleaded guilty and that the plea canvass was deficient for failing to specify that the defendant's driver's license might be revoked permanently. It was only after the state enumerated the specific grounds for withdrawing a guilty plea provided by Practice Book § 39-27, including ineffective assistance of counsel, and argued that defense counsel had not provided a factual basis substantiating any ground, that defense counsel asserted that he had provided ineffective assistance.[7] "At the time he made an oral motion to withdraw the defendant's guilty plea, it was incumbent upon defense counsel to provide the trial court with specific reasons to support the motion, but he failed to do so." *State* v. *Anthony D.*, supra, 320 Conn. 854.

We observe from the record that the proceeding evolved from a motion for a continuance, to a motion to withdraw the guilty pleas, to what appears from the record to be an impromptu claim of ineffective assistance of counsel as a basis for withdrawing the guilty pleas. The court clearly addressed each issue appropriately as they were presented. Under the circumstances of this case, we cannot conclude that the court abused its discretion in failing to afford the defen-

dant an evidentiary hearing.

## II

The defendant next claims that the court abused its discretion when it denied his motion to withdraw his guilty pleas. Specifically, the defendant argues that the court should have granted his motion to withdraw his guilty pleas pursuant to Practice Book § 39-27 (4) because his counsel rendered ineffective assistance.[8] We disagree.

We begin with the standard of review and relevant principles of law that govern our analysis. As previously noted, Practice Book § 39-26 provides in relevant part: "A defendant may withdraw his or her plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [Practice Book §] 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

"[O]ur standard of review is abuse of discretion for decisions on motions to withdraw guilty pleas brought under Practice Book § 39-27. . . . Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered.[9] [O]nce entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for withdrawal of a plea of guilty. . . .

"In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Lameirao*, 135 Conn. App. 302, 319–20, 42 A.3d 414, cert. denied, 305 Conn. 915, 46 A.3d 171 (2012).

"Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . *Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.* The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. . . .

"Practice Book § 39-27 (4) provides an explicit excep-

tion to this general rule, however, and allows a defendant to withdraw a guilty plea after its acceptance if the plea resulted from the denial of effective assistance of counsel . . . . We recognize, therefore, that the defendant's claim of ineffective assistance of counsel is procedurally correct. Nevertheless, we are mindful that on the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. We point out, finally, that irrespective of whether a defendant proceeds by way of habeas corpus or direct appeal, our review is the same, and the burden remains on the defendant to produce an adequate record so that an appellate court may ascertain whether counsel's performance was ineffective." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Turner*, 267 Conn. 414, 426–27, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004).

"A defendant must satisfy two requirements . . . to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. . . . First, he must prove that the assistance was not within the range of competence displayed by lawyers with ordinary training and skill in criminal law . . . . Second, there must exist such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. . . . In addressing this second prong, the United States Supreme Court held in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), that to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The resolution of this inquiry will largely depend on the likely success of any new defenses or trial tactics that would have been available but for counsel's ineffective assistance." (Citation omitted; internal quotation marks omitted.) *State* v. *Scales*, 82 Conn. App. 126, 129–30, 842 A.2d 1158, cert. denied, 269 Conn. 902, 851 A.2d 305 (2004). "In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a [claim of ineffective assistance of counsel]." (Internal quotation marks omitted.) *State* v. *Lameirao*, supra, 135 Conn. App. 327.

In his appellate brief, the defendant argues that his defense counsel rendered ineffective assistance for failing to investigate his case in various ways, including failing to investigate his participation in the program, the court's failure to hold a hearing prior to terminating his participation in the program, the circumstances of

one of his arrests, the timing and admissibility of his blood test, compliance with General States § 14-227b, "the retaliatory nature" of the risk of injury and reckless endangerment charges, the charge of failure to appear for which defense counsel "would have uncovered exculpatory evidence of the clerk sending the notice to the wrong address," and "if the defendant was under the influence of psychotropic medications." In response, the state argues that "[n]one of the defendant's claims of ineffective assistance of counsel are reviewable because they were not raised below, and, to the extent that they were [raised below], he presented no evidence to support any of them." We agree with the state.

To the extent that the defendant raised these grounds before the trial court to support his claim that he should be allowed to withdraw his guilty pleas based on the ineffective assistance of counsel, all the court had before it was the bare assertions that defense counsel made at the beginning of the sentencing hearing, well before he actually asserted that he had rendered ineffective assistance. As we already have discussed, the defendant presented an inadequate factual and legal basis to support those assertions. See Practice Book § 39-26 ("[a]fter acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon *proof* of one of the grounds in [Practice Book §] 39-27" [emphasis added]). Additionally, with regard to the prejudice prong, neither defense counsel nor the defendant articulated before the trial court, much less proved, that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. In light of the foregoing, we conclude that the defendant has failed to satisfy his burden of proving that the guilty pleas resulted from the denial of effective assistance of counsel. The court, therefore, did not abuse its discretion in denying the defendant's motion to withdraw the guilty pleas based on the ineffective assistance of counsel claim.

### III

The defendant next claims that the court abused its discretion by failing to conduct an evidentiary hearing prior to terminating his participation in the program. We disagree.

The following additional facts are relevant to this claim on appeal. The defendant was arrested on May 5, 2014, and charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a.[10] The defendant subsequently was arrested on June 20, 2014, and charged for the second time with operating a motor vehicle while under the influence in violation of § 14-227a.

The defendant applied to participate in the program pursuant to his second operating while under the influ-

ence charge. His application was accepted on February 20, 2015, and the program was granted on the defendant's behalf at a hearing held on April 2, 2015.[11] The transcript of that hearing reveals that the defendant was to complete fifteen sessions and the program termination date was set for April 1, 2016. No hearing was held on the program termination date, however, because the court had not timely received the program completion report.[12]

On May 11, 2016, a little over a month after the scheduled date of termination, the defendant was arrested and charged for the third time with operating a motor vehicle while under the influence in violation of § 14-227a. The defendant, therefore, was facing three counts of operating a motor vehicle while under the influence in violation of § 14-227a, two counts of failure to appear in the second degree in violation of § 53a-173, one count of risk of injury to a child in violation of § 53-21, and one count of criminal trespass in the first degree in violation of § 53a-107. In an effort to secure another opportunity to engage in treatment to avoid mandatory incarceration for his third violation of § 14-227a, the defendant reached a global *Garvin* agreement with the state on his pending charges. That agreement included guilty pleas to three counts of operating a motor vehicle while under the influence as a first offender in violation of § 14-227a, as well as guilty pleas to all other counts under the *Garvin* agreement, with the state agreeing to nolle the felony risk of injury to a child charge and certain other changes brought against the defendant.

Subsequently, at the defendant's February 2, 2018 sentencing hearing, the court discovered that the defendant's participation in the program had not been formally terminated. Defense counsel requested a continuance to "file motions and a brief on the issue of the [program]," which was denied by the court. The court then terminated the program, concluding that, "[b]y way of plea agreement," it "was the clear intention of both parties when the plea agreement was entered in front of Judge Prats that this would result in a conviction for driving under the influence, as a triple first offender. The defendant is receiving a substantial benefit by way of a fully suspended sentence and being allowed to vacate his [conviction of] risk of injury to a child." The court, thereafter, sentenced the defendant according to the plea agreement.

"We begin our analysis with a brief discussion of the relevant statutory framework. Section 54-56g established the program for individuals charged with violating § 14-227a. . . . The trial court has discretion to grant or deny an application to participate in the program." (Citation omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 150, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016). "A person admitted to the . . . program remains under the jurisdiction of the

court for control purposes until he has successfully completed the program and his charges are dismissed. If a defendant satisfactorily completes the program to which he has been assigned, the defendant may apply for dismissal of the charges against him and the court, on reviewing the record of his participation in such program . . . and on finding such satisfactory completion, shall dismiss the charges. . . . The statute clearly requires the trial court to make an independent determination of the defendant's satisfactory completion of the prescribed program of alcohol education and treatment. The trial court is not . . . relegated to the ministerial role of rubber stamping the certification of the program provider that the defendant has successfully completed the assigned program. While the court may rely heavily on the recommendation of the office of adult probation or the program provider, such recommendations are not conclusive. The court must determine for itself, and enter a finding, that the defendant's completion of the program has been satisfactory. Otherwise, there would be no purpose to the statutory requirement that the defendant, upon completion of the program, return to court and apply for dismissal of the charges against him." (Citation omitted; internal quotation marks omitted.) *State* v. *Descoteaux*, 200 Conn. 102, 106–107, 509 A.2d 1035 (1986).

The defendant relies on the language of our Supreme Court in *State* v. *Hancich*, 200 Conn. 615, 513 A.2d 638 (1986), to support his contention that his removal "from the [program] without a hearing violates [§] 54-56g and [his] due process rights." In *Hancich*, the defendant was charged with operating a motor vehicle while under the influence in violation of § 14-227a and was, thereafter, admitted to the program. Id., 616-17. Before completing the program, however, the defendant again was charged with operating a motor vehicle while under the influence in violation of § 14-227a. Id, 617. On appeal to our Supreme Court, the defendant claimed that the trial court improperly refused to dismiss her initial operating while under the influence charge. Id., 626. Our Supreme Court explained that "[o]nce [the defendant] had been admitted to the . . . program, the defendant could not be removed unless the trial court made an independent determination that she had lost her eligibility to continue or that she had not completed it successfully. . . . We note that in this case the trial court need not have deferred its decision on the defendant's motion to dismiss to await the outcome of the upcoming trial on the [second operating under the influence] arrest. The defendant was entitled to no more than a hearing . . . and to an independent determination by the trial court that she had committed the act underlying [her second arrest], and that based on that act, she could not successfully have completed the . . . program. Minimum standards of due process would further require that the trial court state the reasons for

this decision on the record." (Citations omitted; internal quotation marks omitted.) Id., 627.

The defendant's reliance on *Hancich* to support his contention that he should have received an evidentiary hearing is misplaced. In the present case, the defendant pleaded guilty to the charge of operating a motor vehicle while under the influence, for which he participated in the program. The court terminated the program "[b]y way of plea agreement," concluding that it "was the clear intention of both parties when the plea agreement was entered in front of Judge Prats that this would result in a conviction for driving under the influence, as a triple first offender." The court considered the context of the entire plea, and it recognized that, with the plea agreement, "[t]he defendant is receiving a substantial benefit by way of a fully suspended sentence and being allowed to vacate his felony plea to the risk of injury to a child."

The purpose of the diversionary program is to allow first time offenders of § 14-227a an opportunity to rehabilitate so as to avoid further involvement with the criminal justice system while protecting the public from those who operate a motor vehicle while under the influence of intoxicating liquor. See, e.g., *State* v. *Descoteaux*, supra, 200 Conn. 107. A dismissal of the charge is incentive for achieving these public policy goals. It is apparent from our review of the record that the court recognized that, by pleading guilty to three counts of operating a motor vehicle while under the influence of intoxicating liquor, the defendant effectively conceded that, despite participating in the program, he was not entitled to a dismissal of that charge. In considering all of the circumstances surrounding the defendant's pleas, the court properly made an independent determination that termination of the defendant's participation in the program was warranted. Accordingly, the court did not err in failing to afford the defendant an evidentiary hearing prior to terminating his participation in the program.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Yates*, 169 Conn. App. 383, 387 n.1, 150 A.3d 1154 (2016), cert. denied, 324 Conn. 920, 157 A.3d 85 (2017).

[2] The record reveals that the court, *Suarez, J.*, granted the program on the defendant's behalf at a hearing held on April 2, 2015. The defendant was to complete fifteen sessions and the program termination date was set for April 1, 2016.

[3] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with [Practice Book §] 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually

imposed could be imposed. . . .

"(4) The plea resulted from the denial of effective assistance of counsel. . . ."

[4] We note that, the transcript of the sentencing hearing reveals that defense counsel initially sought "three or four days to file motions and a brief on [the] issue of the [program]." The court responded to the defendant's request by seeking clarification as it viewed defense counsel as asking the court not to honor the plea agreement. After giving defense counsel and the defendant time to confer, defense counsel stated: "I'm not asking to abandon . . . the agreement that we reached." The court responded that the defendant was either asking to not honor the agreement, or he was honoring the agreement. Defense counsel then again asked for four days to file papers with the court, which request the court denied on the basis that it had made clear over a month ago that this was the day for sentencing. The court then again sought clarification on what the defendant wanted to do. Defense counsel stated: "[W]hat I'm asking, Your Honor, is the opportunity to provide the court, and specifically the state, with documentation regarding the failures to appear." The court replied: "That you don't have today on what's the known sentencing date on a case where the pleas were entered [in] October 2016. That request is denied."

[5] We note that, after responding that he had nothing further, the court stated that it found no legal reason to vacate the guilty pleas and then the following colloquy occurred:

"[The Defendant]: Your Honor—

"The Court: You want to say something, go ahead.

"[Defense Counsel]: Don't say anything.

"The Court: Absolutely. Go ahead.

"[The Defendant]: No, Your Honor, I don't."

The record reveals that the court gave the defendant ample opportunity to discuss his motion and elaborate on his counsel's arguments, but the defendant chose not to do so.

[6] In denying the defendant's request for a continuance, the court noted that it had already afforded the defendant numerous continuances leading up to the sentencing hearing. The court also noted that it had made clear to the parties on January 11, 2018, that the court would proceed to sentencing on the date finally set for the sentencing hearing, February 15, 2018.

The record reveals that the defendant was afforded fourteen continuances during the sixteen months between the acceptance of his guilty pleas and his sentencing hearing; the defendant did not raise a challenge to the pleas during those sixteen months.

[7] We note that the transcript of the sentencing hearing indicates that the court questioned the timing of defense counsel's numerous, unsupported assertions, which were brought up for the first time at the date he had known for some time was set for sentencing.

[8] In his appellate brief, the defendant also vaguely alleges that the court should have granted his motion to withdraw his guilty pleas, pursuant to Practice Book § 39-27 (2), and that his plea canvass was "improper" because it "did not address [his] participation in the diversionary [program]." The defendant, however, does not cite to authority or provide any analysis to support those propositions. See *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011) ("It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]) Moreover, the defendant did not raise those claims before the court at the sentencing hearing. See *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) ("It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." [Citations omitted; emphasis in original; internal quotation marks omitted.]). For these reasons, we will not address the defendant's claims that his motion to withdraw his pleas should have been granted because the pleas were involuntary, pursuant to Practice Book § 39-27 (2), or that the plea canvass was improper for not addressing his participation in the program.

[9] See footnote 3 of this opinion.

[10] The record reveals that the matter was eventually transferred from the judicial district of New London to the judicial district of Hartford.

[11] The record reflects that the court accepted the program with full knowl-

edge of the defendant's prior operating while under the influence charge.

[12] The program's final progress report, dated August 9, 2017, indicates that the defendant had satisfactorily completed the assigned program. The report states in the comments section, however, that the defendant did not successfully complete the fifteen sessions and, instead, completed an inpatient residential treatment from which he was discharged on March 18, 2016. Proof of the defendant's successful completion of the inpatient residential treatment was not provided until July 20, 2017, well after the one year program termination date set by the court. The report also notes in the comments section that the defendant was arrested on May 11, 2016, for his third operating a motor vehicle while under the influence charge in violation of § 14-227a.

———————————————